IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT L. JOHNSON,                   :

    Plaintiff,                      :

vs.                                  :    CIVIL ACTION 04-0707-CG-M

FRANK SINKSTON, et al.,              :

    Defendants.                     :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. (Docs. 7, 9). This action has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After consideration of the pleadings, and for the reasons set forth below, it is recommended that this action be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

I. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court has reviewed Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2)(B).[1] Under § 1915(e)(2)(B)(ii), a complaint may be

---

[1] The predecessor to this section is 28 U.S.C. § 1915(d). Although Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(e)(2)(B), the frivolity and the failure to state a claim analysis contained in Neitzke v. Williams, 490 U.S. 319 (1989), was unaltered. See Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001); Brown v. Bargery,

dismissed for failure to state a claim upon which relief may be granted, "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Dismissal under § 1915(e)(2)(B)(ii) can occur "at any time" if the Court determines that the action fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B).

## II. DISCUSSION

For purposes of this analysis, the Court assumes as true the allegations in Plaintiff's Complaint.  Plaintiff is currently incarcerated at Donaldson Correctional Facility ("Donaldson"), having been convicted of robbery in 1997 and sentenced to life in prison without the possibility of parole.  (Doc. 7 at 7; Doc. 11).  On December 10, 2004, Plaintiff filed his Complaint under 42 U.S.C. § 1983 against Defendants, Correctional Officer Frank Sinkston,[2] Assistant Warden Thomas, and the "disciplinary board chairman," claiming that, while incarcerated at Holman

---

207 F.3d 863, 866 n.4 (6th Cir. 2000).  However, dismissal under § 1915(e)(2)(B) is now mandatory.  Bilal, 251 F.3d at 1348-49.

[2] Documents filed by Plaintiff in this action indicate that this Defendant's name is Frank Singleton, not Frank Sinkston. (Doc. 12 at 4).  However, for purposes of this review, the Court will refer to Defendant as Frank Sinkston.

Correctional Facility ("Holman") in February, 2004,[3] Defendants violated his constitutional rights by failing to assign him a bottom bunk when he had an injured leg and by placing him in disciplinary segregation for twenty days when he refused to accept a top bunk.  (Doc. 7 at 4-7).  Plaintiff claims that he told Defendant Sinkston that he had a leg "ulcer" that prevented him from getting on the top bunk, and Sinkston instructed him to sign up for sick call.  (Id. at 5-6).  Sinkston then "wrote [Plaintiff] a disciplinary" for refusing a direct order to take a top bunk, and Plaintiff was given twenty days in disciplinary segregation.  (Id.).

Plaintiff filed the current action in the United States District Court for the Middle District of Alabama on September 24, 2004.  (Doc. 1).  The action was transferred to this Court on October 29, 2004.  (Doc. 4).  In his Complaint, Plaintiff seeks monetary damages against Defendants and requests that he be given a "bottom bed profile" and that the disciplinary be removed from his file.  (Id. at 7-8).

Having considered Plaintiff's Complaint in its entirety, the Court finds that Plaintiff's allegations fail to establish any claim against these Defendants for which relief could be granted.

---

[3] Plaintiff was transferred from Holman to Donaldson sometime between January, 2005, and June, 2005.  (Docs. 10, 11).

A. <u>Plaintiff's Eighth Amendment Claim</u>

As discussed above, Plaintiff has named Correctional Officer Frank Sinkston, Assistant Warden Thomas, and the "disciplinary board chairman" as Defendants in this action, claiming that Defendants violated his constitutional rights by failing to assign him a bottom bunk when he had an "ulcer" on his leg. (Doc. 7 at 4-6). The Court interprets these allegations as asserting an Eighth Amendment violation either for denial of medical care or for inhumane conditions of confinement.

> 1. <u>No causal connection alleged as to Defendants Thomas and the "disciplinary board chairman."</u>

In order to state a claim under § 1983, Plaintiff must establish a causal connection between each of the Defendant's actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of Plaintiff's constitutional rights. <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986); <u>Williams v. Bennett</u>, 689 F.2d 1370, 1380 (11th Cir. 1982). "Section 1983 requires proof of an affirmative causal connection between the official act or omission complained of and the alleged constitutional deprivation." <u>Wallace v. Smith</u>, 145 Fed. Appx. 300, 301 (11th Cir. 2005) (unpublished) (quoting <u>Bailey v. Board of County Comm'rs</u>, 956 F.2d 1112, 1124 (11th Cir. 1992)).

Assuming, *arguendo*, that Plaintiff suffered a constitutional deprivation by being denied a bottom bunk when he had an "ulcer" on his leg, Plaintiff does not allege how Defendant Thomas and

the unnamed Defendant, the "disciplinary board chairman," caused that alleged deprivation.[4]  Plaintiff does not allege any personal involvement by Defendant Thomas or the "disciplinary board chairman" in the assignment of his bunk or in the incident in which he refused to take a top bunk.  Furthermore, Plaintiff does not allege that these Defendants established a policy or custom that prevented him from being given a bottom bunk for medical reasons.  With respect to Defendant Thomas, Plaintiff alleges only that, "when [Thomas] came around with the seg[regation] board," he told Thomas about his leg, and Thomas told him to sign up for sick call.  (Id. at 6).  With respect to the "disciplinary board chairman," Plaintiff alleges only that this Defendant refused to give him "time served" for his disciplinary violation.  (Id.).

Having reviewed Plaintiff's Complaint in its entirety as it relates to Defendants Thomas and the "disciplinary board chairman," the Court concludes that § 1983 relief could not be granted under any set of facts that could be proved consistent with Plaintiff's allegations against these two Defendants, as Plaintiff does not allege a causal connection between these two Defendants and his alleged unconstitutional deprivation of a

---

[4] Plaintiff does allege that Correctional Officer Sinkston was personally involved in denying him a bottom bunk, stating that Sinkston told him to take a top bunk and "wrote [him] a disciplinary" when he refused.  (Id. at 6).

5

bottom bunk.

> 2. <u>No allegations of "deliberate indifference" by any of the Defendants</u>.

Even assuming that Plaintiff had alleged a causal connection between his alleged constitutional deprivation and all three Defendants, in order to establish an Eighth Amendment violation for denial of medical care or for inhumane conditions of confinement, Plaintiff must prove that these Defendants were "deliberately indifferent" to his health or safety.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 303 (1991) ("Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*.").

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

<u>Sims v. Mashburn</u>, 25 F.3d 980, 983 (11th Cir. 1994) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).  A prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

6

substantial risk of serious harm exists, and he must also draw the inference.'" Farmer v. Brennan, 511 U.S. 825, 837-38 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

In this action, Plaintiff does not allege that any of the Defendants *knew of*, and disregarded, a substantial risk of serious harm to him by refusing to give him a bottom bunk. There is no allegation that Plaintiff's leg had been examined by the medical staff at Holman prison and that it had been determined that a "bottom bed profile" was medically necessary. There is no allegation that, knowing that a "bottom bed profile" had been ordered by the Holman medical staff, Defendants simply ignored the order. There is no allegation that, even without an order from the Holman medical staff to give Plaintiff a bottom bunk, Plaintiff's injury was of such a nature that one could infer that Defendants "must have known" that a top bunk assignment posed "a substantial risk of serious harm" to Plaintiff.[5] Farmer, 511

---

[5] To the contrary, Plaintiff bases his Eighth Amendment claim on the fact that he was told to climb onto a top bunk while suffering from a leg "ulcer." It is doubtful that these allegations would even satisfy the objective requirement of an Eighth Amendment claim. See Sims, 25 F.3d at 983 ("the alleged wrongdoing [must be] objectively harmful enough to establish a constitutional violation."); Hudson, 503 U.S. at 9 ("Because routine discomfort is 'part of the penalty that criminal

U.S. at 842.

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is *obduracy and wantonness, not inadvertence or error in good faith,* that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

Wilson, 501 U.S. at 298-99 (1991) (emphasis in original) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

In this action, Plaintiff alleges that, when he told Defendant Sinkston that he did not want a top bunk because he had an "ulcer" on his leg, Defendant Sinkston told him that he had to sign up for sick call.  (Doc. 7 at 6).  When Plaintiff continued to refuse to accept his assignment, Defendant Sinkston "wrote [him] a disciplinary" and took him to segregation.  (Id. at 5).  Similarly, Plaintiff alleges that "when [Defendant Thomas] came around with the seg[regation] board," he told Thomas about his leg, and Thomas told him to sign up for sick call.  (Id. at 6).

---

offenders pay for their offenses against society,' . . . 'only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'") (citations and internal quotation marks omitted).  Nevertheless, for purposes of this review, the Court assumes, without deciding, that Plaintiff's injury was sufficiently serious to satisfy the objective requirement of an Eighth Amendment claim.

8

As for the disciplinary board chairman, Plaintiff alleges only that he refused to give Plaintiff "time served" for his violation.  (Id.).  These allegations are wholly insufficient to establish the requisite culpable state of mind of these Defendants.

Because Plaintiff has not alleged any facts which, if proved, would establish that any of the Defendants were deliberately indifferent to a substantial risk of serious harm to him, the Court concludes that § 1983 relief could not be granted under any set of facts that could be proved consistent with Plaintiff's allegations against these Defendants.  Therefore, Plaintiff's Complaint against these Defendants for failing to give him a bottom bunk fails to state a claim upon which relief can be granted.  See Hishon, 467 U.S. at 73.

   B. Plaintiff's Due Process Claim

Plaintiff also claims that Defendants violated his constitutional rights by placing him in disciplinary segregation for twenty days for refusing a direct order to accept a top bunk.  (Doc. 7 at 5).  The Court interprets these allegations as asserting a Fourteenth Amendment due process violation.

In order to assert a Fourteenth Amendment due process claim, Plaintiff must have been deprived of "life, liberty, or property."  Wolff v. McDonnell, 418 U.S. 539, 556  (1974); U.S.

Const. amend. XIV, § 1 (providing, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law..."). In this action, Plaintiff alleges the loss of his liberty as a result of confinement to disciplinary segregation for twenty days.

In Sandin v. Conner, 515 U.S. 472, 487 (1995), the Supreme Court held that there is no right inherent in the Constitution, nor is there a state-created liberty interest, to be free from disciplinary segregation. The Court found that placement in disciplinary segregation as a form of punishment was not a "dramatic departure" from the ordinary conditions of incarceration and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 485-86. The Court determined that mere confinement to disciplinary segregation was a type of discipline that should be expected by an inmate as an incident to his criminal sentence. Id. Thus, under Sandin, an inmate confined to a short term of disciplinary segregation has no protected liberty interest to which the due process protections apply unless the placement substantially differs from the ordinary conditions of confinement. Id. at 486.

In this action, Plaintiff has not alleged any facts which would indicate that his confinement in disciplinary segregation presents "the type of atypical, significant deprivation [that]

10

might conceivably create a liberty interest." Id.  Rather, he alleges only that he was confined in disciplinary segregation for a period of twenty days, which he claims violated his right to due process.

Under Sandin, Plaintiff's allegations do not constitute a deprivation of a liberty interest protected by due process.  See id. at 475, 485-86 (thirty days of disciplinary segregation did not trigger due process concerns); Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (confinement in administrative segregation for a period of two months was not a deprivation of a constitutionally protected interest); see also Treff v. Lott, 149 F.3d 1191, *1-2 (10th Cir. 1998) (unpublished) (Plaintiff's twenty-six days of disciplinary segregation "failed to encroach upon a due process liberty interest because it did not 'impose[ ] atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life.'") (citations omitted); Forman v. Morales, 112 F.3d 503, 1996 WL 591969, *1 (2nd Cir. 1996) (unpublished) (twenty days in disciplinary segregation failed to state a claim under Sandin).  Because Plaintiff has not alleged any facts which, if proved, would establish that he had a protected liberty interest that was violated by his twenty-day stay in disciplinary segregation, the Court concludes that Plaintiff's allegations related to that confinement fail to state a claim upon which relief can be granted.

11

### C. Plaintiff's Claim for Declaratory Relief

In his Complaint, Plaintiff seeks declaratory relief for the alleged unconstitutional deprivation of a bottom bunk at Holman prison. Specifically, Plaintiff states: "I want to be issued a bottom bed profile and have this disciplinary removed from my file...." (Doc. 7 at 8).

A federal court has a duty to examine its jurisdiction and to dismiss an action where jurisdiction is lacking. See McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); Barnett v. Bailey, 956 F.2d 1036, 1039 (11th Cir. 1992). Article III of the United States Constitution limits the jurisdiction of federal courts to the adjudication of certain "Cases" and "Controversies." U.S. Const. Art. III, 2. "The doctrine of mootness is derived from this limitation because an action that is moot cannot be characterized as an active case or controversy." Adler v. Duval County School Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). Declaratory relief, such as that sought by Plaintiff here, is "a prospective remedy, intended to prevent future injuries." Id. For that reason, "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." Id.

In the context of a § 1983 action filed by a prisoner, the law is settled that a prayer for declaratory relief becomes moot

upon the transfer or removal of that prisoner from the facility where his cause of action arose. See, e.g., Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) ("This court has clearly stated the following: Absent class certification, an inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred."); McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985)("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred."). "Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." Wahl, 773 F.2d at 1173 (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

The Court takes judicial notice of the records of the Alabama Department of Corrections which indicate that Plaintiff is currently incarcerated at Donaldson Correctional Facility. (Doc. 11 at 1). Plaintiff does not allege that it is likely that he will return to Holman. Therefore, there is absent "any continuing, present injury or real and immediate threat of

13

repeated injury" to Plaintiff.  Dudley v. Stewart, 724 F.2d 1493, 1494 (11th Cir. 1984) ("Since Dudley is no longer in the custody of county jail officials, the most that can be said for his standing is that *if* he is released from prison, is convicted of another crime and is incarcerated in the Daugherty County Jail, he might again be subject to disciplinary confinement without due process," which is "too speculative to create an actual controversy sufficient for a declaratory judgment to be entered.") (emphasis in original); Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) ("The most that can be said is that if Cotterall is again incarcerated in a minimum security facility and again charged with a disciplinary infraction, he might again be transferred to Coffee County jail.  This is too speculative.").

Accordingly, for the reasons set forth above, the Court finds that Plaintiff's claim for injunctive relief is moot and, therefore, is due to be dismissed without prejudice.  See Besselaar v. Siegelman, 2001 WL 936196, *21-22 (S.D. Ala. 2001) (unpublished) (where plaintiff had been transferred from Holman Correctional Facility to St. Clair and Donaldson Correctional Facilities, his request for injunctive relief pertaining to the conditions of his confinement at Holman prison was barred as moot).

CONCLUSION

Based upon the foregoing, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.   Objection.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.

15

    Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

    DONE this 15th day of December, 2005.

                                               <u>s/BERT  W.  MILLING, JR.</u>
                                               UNITED STATES MAGISTRATE JUDGE